<hr />

## MONTGOMERY v. SAYRE.*

### No. 13,911; January 4, 1891.

25 Pac. 552.

**Jury Trial—Special Findings.**—Where the record shows that two special questions were submitted to the jury which they answered, but gave no general verdict, and that these questions did not cover all the issues in the case; that the trial proceeded, and both parties introduced evidence; and that the case was submitted to the "court for decision and judgment," which was rendered against defendant—the right to trial by jury was waived by defendant under Code of Civil Procedure, section 631, providing that jury trial may be waived by oral consent in open court entered in the minutes or by failure to appear at the trial.

**Trial—Special Verdict.**—Answers to Special Questions not Disposing of all the issues in a case do not constitute a special verdict within Code of Civil Procedure, section 624, defining a special verdict to be that by which the jury find the facts; and such special findings, unaccompanied by a general verdict, are of no effect, since by section 625 the special findings only control when they are inconsistent with the general verdict.

APPEAL from Superior Court, Fresno County; J. B. Campbell, Judge.

Code of Civil Procedure, section 631, provides that the right to trial by jury is waived (1) by failing to appear at the

*For subsequent opinion in bank, see 91 Cal. 206, 27 Pac. 648.

trial; (2) by written consent in person or by attorney, filed with the clerk; (3) by oral consent in open court entered in the minutes.

Geo. A. Nourse for appellant; W. F. Goad and Arthur Rogers for respondent.

THORNTON, J.—This action was on a promissory note executed by defendant's testator to the plaintiff. It was given to secure the payment of the note of the Pioneer Gold Mining Company to the plaintiff for $110,000. This last note was indorsed by William S. Chapman. It was further secured by the pledge of all the shares of the capital stock of the Pioneer Gold Mining Company, except thirty shares thereof, and also by a mortgage on the Pioneer mine, then owned by the company above named, executed by said company. The above facts appear and are not disputed. It further appears that there was a prior mortgage executed by the company on the Pioneer mine, on which a suit for foreclosure was brought, and in this suit the plaintiff, who was one of the defendants therein, filed a cross-complaint, asking that his mortgage be foreclosed. This was done, and an order of sale issued directing the proceeds of the sale of the mine under the decree to be applied first to the payment of the prior mortgage, and the remainder upon the plaintiff's mortgage. At the sale under this decree, the plaintiff became the purchaser of the mortgaged premises for $50,000, of which $10,415 was paid to the owners of the prior mortgage, and the remainder, less costs of sale, was applied on the second debt of plaintiff, adjudged then to amount to $69,426.60. The sheriff's return of sale showed a deficiency due on the second debt to plaintiff, amounting to $61,534.13. The complaint shows payments on the mortgage debt to plaintiff, including the payment made of a portion of the funds of the sale above mentioned, amounting to $98,380.82. Judgment for this deficiency was docketed against the mortgagor company and W. S. Chapman. On this judgment payments were made before the commencement of this action, leaving still due, as averred in this complaint, the sum of $34,551.20. Plaintiff asks judgment on the note sued for, principal and interest thereon, amounting to $17,120.80. The claim of plaintiff on

the note sued on was regularly presented to the defendant's executor, who rejected it. This action was brought on the note to recover the amount above mentioned, to be paid by defendant in due course of administration. It is set up in the answer that the $110,000 note had been fully paid, and denies that any sum remains due and unpaid on it. Other allegations of the complaint were denied. These need not be fully stated. As an affirmative defense, the defendant set up by his answer the following: "That a transcript of the docket of the deficiency judgment docketed against the Pioneer Mining Company and W. S. Chapman (the maker and indorser of the mortgage note) was filed with the recorder of Fresno county in November, 1887, and thus the judgment became a lien upon all the real property of said W. S. Chapman in said Fresno county; (2) that at and before the filing of said transcript, Chapman owned certain real property described, situated in said county, which was held in the name of W. F. Goad, trustee for plaintiff, Montgomery, for further security for debts due Montgomery from Chapman; (3) that the said lien of said judgment was never enforced against said property of said Chapman, but that said Montgomery, Chapman & Goad, after the death of said A. L. Sayre, sold and conveyed by deed to Thomas E. Hughes all said real property for $35,000, paid by Hughes to Montgomery, which was received by Montgomery as payment in full of every debt and obligation due from Chapman to him, except the judgment aforesaid, which then amounted to less than $36,000, and that Montgomery thereupon released said land from the lien of said judgment; (4) that said real estate was then worth $140,000, and if sold at its real value would have realized enough to pay all debts due Montgomery from Chapman, including said deficiency judgment; (5) that said Montgomery released said land from the lien of said judgment, and released said Chapman from the obligation of said judgment without the consent of defendant." The case was tried by a jury on the 28th of April, 1889, who rendered the following verdict:

"Question 1. What was the value, May 15, 1888, of the following lands, viz.: The south half of section 24, section 25, the southeast quarter of section 26 and section 35, all in township 11 south, of range 17 east, from the Mount Diablo

base and meridian; also section 1, and the west half of section 15, in township 12 south, of range 17 east, from said base and meridian? Answer. $136,800. C. C. Harris, Foreman."

"Question 2. Did the plaintiff, A. Montgomery, on or about May 15, 1888, release W. S. Chapman from all liability under the judgment in the complaint herein mentioned? Answer. Yes. C. C. Harris, Foreman."

This verdict, it appears, was in answer to special questions embracing special issues submitted to the jury by the questions above given. There was no other verdict, and no general verdict; nor does it appear that any general verdict was demanded by either party. It appears from the record that the trial proceeded after the return of the verdict, both parties introduced evidence, and on the 24th and 25th of April, 1889, it is stated, "said trial was completed and submitted to the court for decision and judgment, with the privilege to the parties to file briefs herein, which was done." The court subsequently rendered its decision, finding on all the issues in the case, disregarding the verdict, treating it as nonexistent, and, in fact, finding contrary to the answers of the jury on the questions submitted to them, and rendered judgment for plaintiff for a sum of money. The defendant appealed.

The above facts are taken from the record, and on them must the solution of the points in this case be made. Was there any verdict rendered on which judgment could be entered? This is an action at law, and the defenses set up on behalf of defendant were all legal defenses. Payment is certainly a legal defense, and so is the discharge of a surety by releasing his principal, or by surrendering a lien on property sufficient, if sold, to pay the debt for which the surety had obligated himself. We have no doubt of the correctness of these rules. Such is the common law, and it is so prescribed in the Civil Code, sections 2819, 2840. The verdict cannot then be regarded as advisory to the court. The case is not one in equity. It has no such features. All the questions arising on the defenses set up relate to legal defenses. If the facts above mentioned exist, the surety is discharged by operation of law, without the necessity of appealing to a court of equity to obtain such discharge. The fact that the statute requires that the judgment must be entered, payable in due course of administration, does not make this an equity case.

This doctrine applies particularly to actions for the recovery of money, which are almost always actions at law. Certainly such must be the form of the judgment in a recovery on a promissory note. By the statute (Code Civ. Proc., sec. 625), in an action for the recovery of money, a jury may, in their discretion, render either a general or a special verdict. In such a case as the one before us, the court cannot direct the jury to find a special verdict, but it may, in such a case, and in fact in all cases, instruct the jury, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon. This finding on the written question must be returned and filed with the clerk, and entered on the minutes of the court. When the special finding of facts on the questions submitted is inconsistent with the general verdict, the special finding controls the general verdict, and the court is bound to give judgment accordingly; that is, in accordance with the special finding. It must be held, nothing appearing to the contrary, that the court instructed the jury in accordance with law; that is, if they found a general verdict, to find on the questions submitted to them. We cannot assume or presume that the court violated the law in failing to direct the jury to find a general verdict in connection with their answers to the questions, unless the record shows it. The record must put the court in the wrong. If it does not, it must be held that the court acted in accord with the rules of law. We must presume, then, that the jury did not obey the instructions of the judge, in failing to find a general verdict, as they were told to find. Either party had the right to have the court direct the jury, when they returned their verdict on the questions submitted, to return a general verdict. This was not done, and it must be held that this right was waived by each party to the action.

What, then, is the effect of the verdict which was rendered? Neither party asked for judgment on the verdict as rendered. If this had been asked by either party, the other party might have objected. The objection, if made, should have been sustained, and the result would have been a mistrial. The court could not, of its own motion, have ordered judgment on the verdict. It was not such a verdict as judgment could have been rendered on, unless by consent of both parties. If judg-

ment had been entered on it by consent, the maxim would apply concensus toleit errorem, and the judgment would be valid. This was not a special verdict. A special verdict is defined by the code as that by which the jury find the facts only, leaving the judgment to the court: Code Civ. Proc., sec. 624. The facts found by the jury are all the facts in issue. On these facts so found the court renders judgment: See Breeze v. Doyle, 19 Cal. 101. When the jury find a special verdict they are not bound to find a general verdict. In this case they might have returned either a special or a general verdict. Either was within their power; and in this they were beyond the control of the court: Code Civ. Proc., sec. 625. The special finding in this case did not dispose of all the issues. It did not dispose of the defense of payment and other issues. In any point of view it was not a special verdict. It was a special finding, regularly to be accompanied by a general verdict. Not being so accompanied, it was of no legal effect, and no judgment, except by consent of the litigants, could have been entered on it. It was a nullity to which no validity could have been imputed, unless the parties had agreed that it should be regarded, so far as it disposed of the issues in the case, as a controlling finding or verdict. On this point see Eisemann v. Swan, 6 Bosw. 668. But the record shows no such agreement. For all that appears the jury was discharged without finding anything which in law can be held as a verdict, and the record informs us that the parties submitted further evidence; that the trial was completed on the 25th of April, 1869 (one day after the so-called verdict was returned into court); and that the cause was, on the 25th of April, "submitted to the court for decision and judgment." The verdict seems to have been treated by counsel and court as of no effect. It appears in the transcript that the cause came on regularly for trial; was tried on the 24th and 25th of April, 1889, when the trial was completed. We cannot construe this otherwise than as a statement, which we must hold to be absolutely true, that the trial was not completed until the twenty-fifth day of April, 1889, the day after the special findings were filed. Certainly the verdict on an incomplete trial is a nullity, and should be so treated, unless it is shown that the parties gave it effect by a stipulation that it should be regarded as of some validity, and how far it

should be so regarded. The defendant had a right to have his cause tried by a jury. This was accorded to him. The jury was called and sworn in the case, and then was discharged without objection, without rendering a verdict. Both parties afterward went on to try the case, introduced further evidence, and submitted the case for decision and judgment. We cannot hold otherwise than that there was a waiver of a trial by jury, just as effectual as if his consent had been given in open court, and entered on the minutes. The minutes show a consent by action in open court, by proceeding with the trial, introducing further evidence after the jury was discharged, and submitting the case for decision and judgment. Such action was inconsistent with any demand or desire for a jury trial, and should be held a waiver, within the provisions of section 631, Code of Civil Procedure.

It is argued that the verdict was not waived. But in our view there was no verdict, and the counsel seems to have so regarded it, or he would have asked for judgment on the verdict. We can put no other construction on the statements in the record of the course that the trial took than that the finding was regarded as no verdict, and that the trial should proceed as if no verdict had been found. No question of waiver arises on the finding, for there was no verdict. It gave the defendant no right, for it conferred none. It cannot be said that the defendant did not waive his right to have judgment entered on the verdict, as the special finding gave no such right to either party. If it had conferred a right to judgment, and the parties had afterward to complete an incomplete trial, the question might arise, although it would be manifestly unjust to hold either party bound by a verdict on an unfinished and incomplete trial. This disposes of all the questions arising in the cause. There was no motion for a new trial. There is no statement or bill of exceptions in the case, nor any motion made in the court below to set aside the judgment on any ground. We find no error in the record, and the judgment must be and is affirmed.

We concur: McFarland, J.; Sharpstein, J.